Filed 12/16/14

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| SOUTHERN CALIFORNIA GAS COMPANY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> PATRICK FLANNERY, <br><br> Defendant and Appellant. | B249616 <br><br> (Los Angeles County Super. Ct. No. BC442504) |


APPEAL from the orders of the Superior Court of Los Angeles, John S. Wiley, Jr., Judge.  Affirmed.

Daneshrad Law Firm and Joseph Daneshrad; Benedon & Serlin, Gerald M. Serlin, Kelly R. Horowitz, for Defendant and Appellant.

Sheppard Mullin Richter & Hampton, Steven O. Kramer, John A. Yacovelle, Jonathan D. Moss, Marisa B. Miller; Sempra Energy's Office of the General Counsel, Marlin E. Howes, for Plaintiff and Respondent.

_____

Plaintiff and respondent Southern California Gas Company (SCGC) filed a complaint in interpleader against defendant and appellant Patrick Flannery and his former attorney.  SCGC filed a motion for discharge from the interpleader action and an award of attorney fees under Code of Civil Procedure section 386.6[1] (the "Discharge Motion") and Flannery filed a special motion to strike under section 425.16 (the "Anti-SLAPP Motion").  The court granted the Discharge Motion and denied the Anti-SLAPP Motion. Flannery appeals both orders.

Flannery contends the court erroneously concluded (1) section 425.16 (the anti-SLAPP statute) does not apply to interpleader complaints, (2) the interpleader complaint did not arise from protected activity, and (3) SCGC demonstrated a probability of prevailing on its interpleader complaint.  We affirm the court's order denying Flannery's Anti-SLAPP Motion on the grounds that SCGC met its burden of showing a probability it would prevail on the merits of its interpleader action.

Flannery also contends the court erroneously granted SCGC's Discharge Motion because (1) his due process rights were violated, (2) there is no statutory basis for the Discharge Motion, and (3) the court's attorney fee award is not supported by substantial evidence.  We reject each contention and affirm the order granting the Discharge Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 15, 2013, SCGC filed a complaint in interpleader (the "Interpleader Action") and deposited an unspecified amount with the clerk of the court.  To place the Interpleader Action in context, we review the procedural history of related cases involving Flannery, his ex-girlfriend Andrea Murray, and his former attorney Scott Tepper.

---

[1] All further statutory references are to the Code of Civil Procedure, unless otherwise stated.

In 2009, Flannery and Murray sued SCGC for damages suffered as a consequence of the 2008 Sesnon wildfire.  The case (the "Sesnon Fire Case") was consolidated with other cases stemming from the wildfire (the "In re Sesnon Fire Cases").  Flannery and Murray were jointly represented by Tepper until attorney Dennis Ardi substituted in as Murray's counsel in the fall of 2010.  Tepper continued to represent Flannery until June 2012, when attorney Joseph Daneshrad substituted in as Flannery's counsel.  On June 22, 2012, Tepper filed a notice of lien against any recovery in the Sesnon Fire Case.

On February 26, 2013, Flannery, Murray, and SCGC settled the Sesnon Fire Case, and the parties' settlement was approved by the trial court.  The agreement required SCGC to pay confidential but specific monetary amounts (the "Settlement Funds") to (1) Flannery and his counsel, (2) Murray and her counsel, and (3) an attorney whose role is not relevant to our facts.  The agreement required SCGC to pay the Settlement Funds before March 19, 2013.

On February 27, 2013, one day after the parties had settled, Tepper sent an e-mail to all counsel in the Sesnon Fire Case advising them that he was "entitled to know the amount of the settlement[, asserted] a lien equal to 33 1/3% of the settlement proceeds" and requested "assurances that my lien will be protected . . . ."  He further advised that if he was not given the requested assurances, he would "apply to the court for an order requiring my lien to be protected and honored, and take such additional steps as may be necessary to enforce my lien."

On March 6, 2013, counsel for SCGC advised Daneshrad and Tepper that in order to protect SCGC from the dispute over attorney fees, it intended to interplead the Settlement Funds unless it received "written directions signed by both of you and Mr. Flannery."  By March 13, 2013, Daneshrad and Tepper had been unable to reach agreement.  In a final attempt to resolve the dispute, SCGC proposed three alternatives, conditioning the first two on obtaining agreement from both Tepper and Daneshrad (1) one check made out Flannery, Daneshrad and Tepper, (2) one check for 2/3 of the Settlement Funds made out to Flannery and Daneshrad and one check for 1/3 of the Settlement Funds made out to Flannery, Daneshrad, and Tepper, or (3) interplead the

3

Settlement Funds. Rather than reaching an agreement, both attorneys began taking opposing stances on whether Murray also had a claim to the Settlement Funds.[2] Unable to obtain agreement from Tepper and Daneshrad, SCGC filed the Interpleader Action on March 15, 2013, identifying Tepper, Daneshrad, and Flannery as defendants and claimants, and deposited the Settlement Funds with the court. On March 21, 2013, SCGC filed an amendment adding Murray as a Doe defendant.[3]

On March 20, 2013, once the deadline for SCGC to pay the Settlement Funds had expired, Flannery filed an ex parte motion in the Sesnon Fire Case to enforce the settlement agreement. The court ordered the parties to file an application to seal the ex parte motion and continued the matter to March 25, 2013.

On March 25, 2013, with counsel for Flannery and SCGC appearing, the court continued Flannery's ex parte motion to enforce the settlement agreement to April 10, 2013, and ordered the papers supporting the ex parte to be returned to the parties "for safekeeping pending further hearing on ex parte, without refilling [sic] of papers." At the same hearing, the court deemed the Interpleader Action related to the In Re Sesnon Fire Cases. The court ordered the parties to participate in a mandatory settlement conference on April 3, 2013. The parties also stipulated to use Case Home Page, the same e-service provider used in the In re Sesnon Fire Cases.

---

[2] While the Sesnon Fire Case was pending, Murray and Flannery were engaged in separate litigation against each other (the "Palimony Action"). On February 28, 2013, Murray obtained a preliminary injunction in the Palimony Action preventing Flannery from negotiating the Settlement Funds from the Sesnon Fire Case, and directing him to deposit the Settlement Funds into a trust account held by the attorneys for Flannery and Murray for their benefit. The injunction provided that no disbursements would be made from that account until further order from the court.

[3] On March 20, 2013, Murray's attorney informed SCGC that in the context of the Palimony Action, Murray had obtained an order requiring Flannery to deposit the settlement funds into a trust account for the benefit of Murray and Flannery. Murray's attorney requested SCGC to add Murray as a Doe defendant in the Interpleader Action and agreed to accept service on behalf of Murray.

4

Tepper and Murray filed answers to SCGC's interpleader complaint on March 25, 2013, and March 27, 2013, respectively. On April 3, 2013, Flannery, Murray, Tepper, and SCGC participated in a mandatory settlement conference.

On April 10, 2013, the court held a status conference in the In re Sesnon Fire Cases. The record reveals some confusion about whether Flannery's ex parte motion to enforce the settlement agreement remained on calendar for April 10, 2013, but neither Flannery nor Daneshrad appeared. At the April 10, 2013 status conference, SCGC orally moved to be discharged from the Interpleader Action. The court scheduled the motion to be heard at a status conference on April 24, 2013. SCGC prepared a "Notice of Ruling re Status Conference" and served it on all parties through Case Home Page the following day.

SCGC filed the Discharge Motion on April 15, 2013, with a hearing date of April 24, 2013. The proof of service shows service through Case Home Page, as well as e-mail service on Daneshrad. On April 23, 2013, Flannery, represented by Daneshrad, filed his Anti-SLAPP Motion against SCGC's interpleader complaint.[4]

On April 24, 2013, with counsel for all parties to the Interpleader Action appearing, the court continued the hearing on SCGC's Discharge Motion to May 17, 2013. On May 6, 2013, SCGC, Murray, and Tepper filed separate oppositions to Flannery's Anti-SLAPP Motion.

At the May 17, 2013 hearing, the trial court considered SCGC's Discharge Motion before Flannery's Anti-SLAPP Motion, noting that no party had filed an opposition to the Discharge Motion. Daneshrad objected, arguing that because Flannery had not appeared in the Interpleader Action until he filed his Anti-SLAPP Motion on April 23, 2013, he did not have adequate notice of the Discharge Motion and it would violate Flannery's due process rights for the court to consider the motion. In response to the court's description of SCGC's Discharge Motion as being "unopposed," Daneshrad stated his opposing

_____

[4] Flannery also filed a peremptory challenge to the trial judge, which the judge denied as untimely. Writ review of the denial of the section 170.6 ruling was summarily denied by this court.

5

arguments were contained in Flannery's Anti-SLAPP Motion. The court granted the Discharge Motion.

The trial court next provided the parties with a copy of its tentative ruling denying Flannery's Anti-SLAPP Motion. The court and the parties held an off-the-record discussion, after which the court noted on the record that Daneshrad was submitting on the tentative ruling. Daneshrad stated his intent to appeal the court's ruling on the anti-SLAPP motion, noting that once a notice of appeal is filed on an anti-SLAPP, "no further action can be taken . . . ."

Flannery filed a Notice of Appeal on June 20, 2013, with respect to the trial court's rulings on SCGC's Discharge Motion and Flannery's Anti-SLAPP Motion.

**DISCUSSION**

**<u>Anti-SLAPP Statutory Scheme and Standard of Review</u>**

"A ruling on a special motion to strike under section 425.16 is reviewed de novo. [Citation.] This includes whether the anti-SLAPP statute applies to the challenged claim. [Citation.]" (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 645.) "[S]ection 425.16 requires that a court engage in a two-step process when determining whether a defendant's anti-SLAPP motion should be granted. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim. [Citation.]" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76.) "Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navallier*), italics omitted.)

The court's decision to deny Flannery's Anti-SLAPP Motion rested on three separate and independent grounds. First, because the interpleader complaint does not include a "cause of action," it was not subject to a motion to strike under the anti-SLAPP statute. Second, the interpleader complaint did not "arise from" protected speech or conduct. Third, SCGC was likely to prevail on the merits of its interpleader complaint.

We need not engage in the first step of the anti-SLAPP analysis, and decline to address (1) whether an interpleader action states a cause of action and (2) whether the complaint arises from conduct subject to protection under the anti-SLAPP statute as conduct in furtherance of Flannery's right to petition.[5] We instead proceed directly to the second step of analysis and conclude SCGC has established a probability of prevailing on the merits of the interpleader action, which provides an adequate basis for affirming the order of the trial court. (See *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819 [dispensing with discussion of first step of analysis under the anti-SLAPP statute— whether complaint arises from protected conduct—because plaintiff demonstrated a probability of prevailing on its claims].)

**Probability that SCGC will Prevail in the Interpleader Action**

The trial court correctly denied Flannery's Anti-SLAPP Motion in part because SCGC established a probability of prevailing in the current action. The record on appeal establishes that SCGC filed a legally sufficient complaint in interpleader and successfully obtained discharge from the interpleader proceeding. SCGC has not only shown a probability of prevailing, it has in fact prevailed on its interpleader complaint.

---

[5] Less than a week before oral argument in this case, Division Eight of this court concluded that a complaint seeking declaratory relief regarding a former attorney's lien on settlement proceeds is not subject to an anti-SLAPP motion because the complaint does not allege that defendants engaged in wrongdoing by asserting the lien. (*Drell v. Cohen* (Dec. 5, 2014, B253688) __ Cal.4th __.) Because we decline to address whether the Interpleader Action arises from protected activity, we need not address Division Eight's opinion.

7

The anti-SLAPP statute "poses no obstacle to suits that possess minimal merit." (*Navellier*, *supra*, 29 Cal.4th at p. 93). Instead the statute "subjects to potential dismissal only those causes of action as to which the plaintiff is unable to show a probability of prevailing on the merits (§ 425.16, subd. (b)), a provision we have read as 'requiring the court to determine only if the plaintiff has stated and substantiated a legally sufficient claim' [citation]." (*Equilon Enterprises v. Consumer Care, Inc.* (2002) 29 Cal.4th 53, 63.) "We decide the second step of the anti-SLAPP analysis on consideration of 'the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b).) Looking at those affidavits, '[w]e do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law.' [Citation.] [¶] That is the setting in which we determine whether plaintiff has met the required showing, a showing that is 'not high.' [Citation.]" (*Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 989.)

*Legal requirements for a complaint in interpleader*

Flannery's main argument is that SCGC cannot prevail because it does not meet the requirements for interpleader. Flannery contends SCGC was contractually obliged to pay the settlement funds to him and did not face a plausible threat of double vexation. We disagree.

"Interpleader is an equitable proceeding by which an obligor who is a mere stakeholder may compel conflicting claimants to money or property to interplead and litigate the claims among themselves instead of separately against the obligor . . . . After admitting liability and depositing the money or property with the court, the obligor is discharged from liability and freed from the necessity of participating in the litigation between the claimants." (4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 237, p. 317; see Code Civ. Proc., § 386.) Under section 386(b), any person or entity "against

8

whom double or multiple claims are made, or may be made, by two or more persons which are such that they may give rise to double or multiple liability, may bring an action against the claimants to compel them to interplead and litigate their several claims." "The true test of suitability for interpleader is the stakeholder's disavowal of interest in the property sought to be interpleaded, coupled with the perceived ability of the court to resolve the entire controversy as to entitlement to that property without need for the stakeholder to be a party to the suit. '"[I]f the relations of the parties are such that the court's decision would determine the responsibility of the [interpleader plaintiff], he is for the purposes and within the scope of the code section authorizing interpleader a mere stake-holder."' [Citations.]" (*Pacific Loan Management Corp. v. Superior Court* (1987) 196 Cal.App.3d 1485, 1489-1490.)

"'The purpose of interpleader is to prevent a multiplicity of suits and double vexation. [Citation.] "The right to the remedy by interpleader is founded, however, not on the consideration that a [person] may be subjected to double liability, but on the fact that he is threatened with double vexation in respect to one liability." [Citation.]' [Citation.] 'In an interpleader action, *the court initially* determines the right of the plaintiff to interplead the funds; if that right is sustained, an interlocutory decree is entered which requires the defendants to interplead and litigate their claims to the funds.' [Citation.] Then, in the second phase of an interpleader proceeding, the trial court also has 'the power under [Code of Civil Procedure] section 386 to adjudicate the issues raised by the interpleader action including: the alleged existence of conflicting claims regarding the interpleaded funds; plaintiffs' alleged position as a disinterested mere stakeholder; and ultimately the disposition of the interpleaded funds after deducting plaintiffs' attorney fees.' [Citation.]" (*Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1513-1514.)

9

*Double vexation*

Flannery argues that SCGC cannot succeed in its interpleader action because it did not face a viable threat of double vexation. He attempts to analogize the competing claims faced by SCGC to those at issue in *Westamerica Bank v. City of Berkeley* (2011) 201 Cal.App.4th 598 (*Westamerica*) and *City of Morgan Hill v. Brown* (1999) 71 Cal.App.4th 1114 (*Morgan Hill*). Flannery's arguments are unpersuasive. SCGC faced double vexation based on Flannery and Tepper's competing claims to the Settlement Funds, and it risked being held liable to Tepper for interference with prospective economic advantage if it paid the Settlement Funds to Flannery in accordance with the settlement agreement.

In *Westamerica, supra,* 201 Cal.App.4th at pp. 612-613, the court sustained the defendant city's demurrer to a bank's complaint in interpleader on the grounds that the bank, a purported stakeholder, faced no reasonable probability of double vexation by the city and the contractor. In reaching its holding, the court interpreted a statutory escrow agreement governing funds relating to a public construction project. It concluded the bank did not face a threat of double vexation because (1) the terms of the agreement clearly directed the bank to pay the fund at the city's direction, (2) the agreement did not permit the contractor (whose claim was purportedly conflicting) to direct payment of the fund without the city's consent, and (3) the agreement obliged both the city and the contractor to hold the bank harmless for following the city's instructions. (*Id*. at pp. 608-612.)

Flannery argues that, like the escrow instructions in *Westamerica*, the settlement agreement only obligates SCGC to pay the Settlement Funds to him and his attorney and therefore precludes SCGC's claim of double vexation. This argument ignores the fact that Tepper had notified SCGC of a lien on any recovery in the Sesnon Fire Case. That lien, considered in light of case law establishing liability for intentional interference with prospective economic advantage when a settling party pays a settlement to a party in derogation of a former attorney's lien on settlement proceeds, substantiates SCGC's

10

claim of double vexation. (*Levin v. Gulf Ins. Group* (1999) 69 Cal.App.4th 1282, 1285 (*Levin*).) A discharged attorney may state a cause of action for intentional interference with prospective economic advantage where a third party with notice of a lien for attorney fees pays the former client in settlement of the case without acknowledging the lien. (*Ibid*.) A litigant's former attorney is entitled to recover the reasonable value of services rendered to the time of discharge, but the right to such recovery does not ripen until the litigant prevails. (*Fracasse v. Brent* (1972) 6 Cal.3d 784, 792; *Levin, supra*, at p. 1285.) Where the attorney has a contingent fee contract with the creation of a lien in favor of the attorney upon recovery, the attorney becomes an equitable assignee of any judgment or settlement. (*Levin, supra*, at p. 1286.) Payment of the judgment or settlement in disregard of the lien, where the payor has knowledge of the lien, exposes the payor to a claim for intentional interference with prospective economic advantage. (*Id*. at p. 1287.)

Flannery also relies on *Morgan Hill* to argue that SCGC's only obligation was to pay the settlement funds to him and that any claims asserted by Tepper or Murray were against him, not SCGC. In *Morgan Hill, supra*, 71 Cal.App.4th at p. 1119, the city filed a complaint in interpleader with respect to unpaid attorney fees. The city acknowledged its obligation to pay the fees, but alleged it faced conflicting claims from the firm and one of the firm's former attorneys, who now represented the city on other matters. The court reasoned the city did not state a cause of action for interpleader because the former attorney only had a claim against the firm, not against the city. "[T]he undisputed facts show that [the former attorney] has no right to collect the Fees from City nor is she given any lien rights in those Fees." (*Id*. at p. 1126.) Because interpleader is designed to address "conflicting claims against the same obligor over the same fund; not on the possible eventual right to a judgment that might be satisfied out of that fund," the City did not have grounds for an interpleader cause of action. (*Ibid.*) In concluding that the city could not proceed with its interpleader action, the court also noted that the former attorney could obtain an unfair negotiating advantage because "allowing interpleader in these circumstances would constitute a form of prejudgment attachment" without the

11

normal procedural protections. (*Id*. at p. 1125.) Once again, the case before us is distinguishable because Tepper had asserted a lien on the settlement proceeds, and SCGC faced potential liability if it paid the settlement funds in violation of that lien. Although Flannery suggests that Tepper colluded with SCGC and influenced its decision to file the interpleader complaint, the record does not support such an inference. Two days before filing the complaint, SCGC proposed two alternatives that would be acceptable, but the parties with conflicting claims could not reach agreement.

*No obligation to resolve conflicts between claimants*

Flannery further contends SCGC could have avoided the need for interpleader by making the settlement check out to multiple parties. The existence of an alternate method for resolving the competing claims of Flannery and Tepper does not preclude an interpleader action as a viable legal option for SCGC. Flannery does not cite to any case imposing on the plaintiff in an interpleader action a duty to resolve conflicting claims by means other than interpleader. The function of an interpleader action is to eliminate the risk of incorrectly resolving conflicting claims. "'[W]hen a disagreement arises as to the ownership of said property, the holder thereof has not obligated himself to *settle said disagreement* and deliver the property to either of said parties in the face of conflicting claims thereto.'" (*Pacific Loan Management Corp. v. Superior Court*, *supra*, 196 Cal.App.3d at p. 1490; see also *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 876 [stakeholder not obligated to "resolve the apparent dispute without the consent of the competing claimants"].)

SCGC stated and substantiated a legally sufficient claim in interpleader because it faced double vexation for payment of the amount it had agreed to pay to settle Flannery's claims against it in the Sesnon Fire Case. SCGC acknowledged its obligation to pay the settlement amount, but faced conflicting claims from Flannery and Tepper, his former attorney.

12

*Interpleader discharge*

In addition to meeting the requirements for filing an interpleader action, SCGC successfully obtained a discharge and an award of attorney fees under section 386.6, subdivision (a).[6] In order to obtain attorney fees under section 386.6, an interpleader plaintiff must follow all the requirements of section 386 and 386.5, including disavowing any interest in the amount being interpleaded, depositing that amount with the court, and seeking and obtaining a discharge from liability. (*Phillips v. Barton* (1962) 207 Cal.App.2d 488, 495-496.)

It is undisputed that SCGC has disavowed any interest in the settlement funds and has deposited the full amount with the court. Had there been a viable argument against SCGC's use of the interpleader mechanism provided under section 386, it would have been considered by the court in the course of deciding whether to discharge SCGC from the interpleader proceeding. Because we find Flannery's arguments against discharge lacking, SCGC has not only established a probability of prevailing, it has in fact prevailed in the interpleader action. Thus, the court properly denied Flannery's Anti-SLAPP Motion on the grounds that SCGC was likely to prevail on its complaint.

---

[6] "A party to an action who follows the procedure set forth in Section 386 . . . may insert in his motion, petition, complaint, or cross complaint a request for allowance of his costs and reasonable attorney fees incurred in such action. *In ordering the discharge of such party, the court may, in its discretion, award such party his costs and reasonable attorney fees from the amount in dispute which has been deposited with the court.* At the time of final judgment in the action the court may make such further provision for assumption of such costs and attorney fees by one or more of the adverse claimants as may appear proper." (§ 386.6, subd. (a), italics added.) The court granted attorneys fees as part of SCGC's Discharge Motion. It recognized that SCGC might also have a basis for recovering a portion of its attorneys fees for opposing Flannery's unsuccessful anti-SLAPP motion, but it chose to make the full attorneys fee award under section 386.6 as part of discharging SCGC from any liability in the interpleader action.

**Discharge and Award of Attorney Fees and Costs**

SCGC disputes the appealability of the court's order granting the Discharge Motion. The order is appealable under *Sweeney v. McClaran* (1976) 58 Cal.App.3d 824, 827-828 (*Sweeney*) [order discharging stakeholder from liability and granting attorney fees is appealable]).[7]

Flannery contends the order deprived him of due process because he did not have adequate notice or an opportunity to oppose SCGC's discharge from the interpleader action. He also contends the order was substantively erroneous because the court lacked statutory authority to discharge SCGC prior to final judgment and because the attorney fee award was not supported by the evidence. We reject Flannery's contentions.

*Due process*

The record on appeal does not support Flannery's contention that the court's order granting SCGC's Discharge Motion violated his right to due process. As the California Supreme Court has emphasized, "the precise dictates of due process are flexible and vary according to context." (*Today's Fresh Start, Inc. v. Los Angeles County Office of Educ.* (2013) 57 Cal.4th 197, 212.) Flannery had adequate "'notice of the case against him and opportunity to meet it.'" (*Mathews v. Eldridge* (1976) 424 U.S. 319, 348.)

Flannery's counsel, Daneshrad, was present at the March 25, 2013 hearing at which the court related the Interpleader Action to the In re Sesnon Fire Cases. He consented to service through Case Home Page, and therefore received notice on April 11, 2013, that SCGC had made an oral motion for discharge at an April 10, 2013 status

---

[7] Division Four of this court dismissed as interlocutory an appeal from a discharge order in *Lincoln Nat'l Life Ins. Co. v. Mitchell* (1974) 41 Cal.App.3d 16, 19-20. The current appeal is more akin to *Sweeney* because Flannery appeals from not just the discharge order, but also from the award of attorney fees and costs. In addition, Flannery's contentions against the discharge order are directly related to issues raised in the appeal of the anti-SLAPP motion.

14

conference and that the court had set the matter for hearing on April 24, 2013. Daneshrad also acknowledged receiving the written Discharge Motion filed on April 15, 2013.

Without citing any case authority, Flannery argues that any notice given before he made his first appearance in the Interpleader Action by filing his Anti-SLAPP motion on April 23, 2013 was inadequate. We are unpersuaded, but even if we were to accept Flannery's argument, when the court ordered on April 24, 2013, that the hearing on the Discharge Motion would be continued to May 17, 2013, it ensured that Flannery not only had ample notice, but an opportunity to oppose SCGC's discharge motion. His argument that the court did not set a deadline for filing an opposition to SCGC's motion for discharge is not well taken. (See, § 1005, subd. (b) [requiring 16 court days' notice for motions, and requiring oppositions to be filed 9 court days before the scheduled hearing].)

Even if Flannery could demonstrate inadequate notice, he does not explain how the lack of notice caused him any prejudice, a requirement for relief on appeal. (*Reedy v. Bussell* (2007) 148 Cal.App.4th 1272, 1289 [to seek reversal, "the appellant must demonstrate not only that the notice was defective, but that he or she was *prejudiced*"].) "Procedural defects which do not affect the substantial rights of the parties do not constitute reversible error. (Code Civ. Proc., § 475.)" (*Lever v. Garoogian* (1974) 41 Cal.App.3d 37, 40.) At the hearing, after Daneshrad made his due process objection to the court's consideration of SCGC's Discharge Motion, he also stated that his opposition to SCGC's motion for discharge was contained in Flannery's anti-SLAPP motion filed on April 24, 2013. On appeal, Flannery does not identify any additional arguments that would have persuaded the court to deny the Discharge Motion if he had the opportunity to make those additional arguments. Accordingly, Flannery fails to demonstrate reversible error.

15

*Authority to discharge an interpleader plaintiff*

Flannery contends the court lacked authority to discharge SCGC from the interpleader action because section 386 does not authorize such a discharge. To the contrary, section 386.6, subdivision (a) authorizes the court to discharge the interpleading party and award attorney fees *before* a final judgment in the action: "In ordering the discharge of such party, the court may, in its discretion, award such party his costs and reasonable attorney fees from the amount in dispute which has been deposited with the court. At the time of final judgment in the action the court may make such *further* provision for assumption of such costs and attorney fees by one or more of the adverse claimants as may appear proper." (§ 386.6, subd. (a), italics added.)

*Attorney fees and costs award*

Flannery asks this court to reverse the lower court's award of attorney fees and costs under section 386.6, contending the award is not supported by substantial evidence. "'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong"—meaning that it abused its discretion. [Citations.]'" (*PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1095.) Flannery did not present any evidence to the counter the declarations submitted by counsel for SCGC, nor did he oppose the amount of attorney fees requested. On the record before us, recognizing that SCGC had a team of attorneys working on the In re Sesnon Fire Cases, the court did not abuse its discretion when it accepted SCGC's assertion that it had incurred $81,053.44 in fees and costs in connection with preparing the complaint in interpleader, attending various hearings and the mandatory settlement conference, opposing defendant's anti-SLAPP motion, and preparing the Discharge Motion.

16

## DISPOSITION

The trial court's orders denying Flannery's Anti-SLAPP Motion and granting SCGC's Discharge Motion and award of attorney fees and costs are affirmed. Costs on appeal are awarded to SCGC.


KRIEGLER, J.

We concur:


MOSK, Acting P. J.


GOODMAN, J. *

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.