Filed 7/6/16  Flannery v. Tepper CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PATRICK FLANNERY, | B268576 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. LC102616) |
| v. | |
| SCOTT J. TEPPER, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Russell S. Kussman, Judge.  Affirmed.

Daneshrad Law Firm, Joseph Daneshrad for Plaintiff and Appellant.

Law Offices of John N. Tierney, John N. Tierney; Raskin Gorham Anderson Law, Gary Raskin for Defendant and Respondent.

_____

Plaintiff sued his former attorney for intentional interference with contractual relations after the attorney, in asserting a lien for fees, refused to assist plaintiff in the violation of a court order. Defendant, the former attorney, filed a special motion to strike the complaint as a Strategic Lawsuit Against Public Participation (SLAPP). (Code Civ. Proc., § 425.16.).[1] We affirm the trial court's order granting the motion and the subsequent judgment.

## BACKGROUND

### Assertion of the lien

In October 2009, defendant Scott Tepper and his law firm were retained by plaintiff Patrick Flannery and Andrea Murray, an unmarried couple, to prosecute an action against Southern California Gas Company (SCGC) for damage to real and personal property suffered in connection with the Sesnon wildfire. Their written retainer agreement provided that the firm's compensation would be approximately one-third of any recovery obtained. The agreement further provided that the firm was entitled to a lien on any recovery to secure payment of fees and costs.

On behalf of Flannery and Murray, Tepper's firm caused a lawsuit to be filed against SCGC (the wildfire action). After the filing of that action, Murray and Flannery became involved in separate litigation with each other (the Murray-Flannery litigation). In September 2010, believing there was a nonwaivable conflict, Tepper advised Flannery and Murray that he and his firm could no longer represent them jointly. Murray retained new counsel. Flannery insisted that Tepper remain as counsel for him, which Tepper did until June 2012, when Tepper decided that he was ethically required to withdraw from representing Flannery. Joseph Daneshrad substituted in as counsel for Flannery in the wildfire action on June 13, 2012. At the time of the substitution, Tepper's records reflected that his firm had expended nearly 900 hours of billable time on the wildfire

---

[1]     Unless otherwise noted, all further statutory references are to the Code of Civil Procedure.

2

action. On June 22, 2012, Tepper filed a notice of lien in the wildfire action stating that he and his firm held a lien against any judgment or settlement accruing to plaintiffs.

The wildfire action was settled on February 26, 2013, with $2,450,000 to be paid by SCGC to Daneshrad's client trust account, in favor of his client, Flannery, and $417,514.79 to be paid by SCGC to Murray, through her attorney's trust account. On February 27, 2013, Tepper sent an e-mail to Daneshrad, as well as counsel for Murray and SCGC, asserting a lien equal to 33-1/3 percent of the settlement proceeds. Tepper's e-mail demanded that SCGC either set aside 33-1/3 percent of any settlement payments for distribution to him and his firm, or that any settlement checks include him and his firm as a payee. The next day, Tepper e-mailed SCGC counsel, stating that he had reached agreement with Murray and withdrew his lien as to her, but that he continued to assert the lien as to Flannery. Tepper's e-mail concluded, "I understand you may need to file an action in interpleader, and to seek your costs and attorney's fees for doing so."

**The injunction order**

On February 28, 2013, in the Murray-Flannery litigation, Murray obtained an injunction ordering Flannery not to "negotiate the settlement proceeds" of $2,450,000 from the wildfire action and to "deposit the settlement proceeds . . . in a trust account in the name of Joseph Daneshrad and [Murray's attorney] Philip Kaufler for the benefit of Patrick Flannery and Andrea Murray, and no disbursements shall be made from said trust account until further order from the court."

**Communications regarding interpleader**

On March 5, 2013, Daneshrad sent an e-mail to SCGC counsel requesting that SCGC issue a draft to him of two-thirds of the settlement amount, which, according to Daneshrad was the "undisputed amount." Daneshrad did not inform SCGC of the injunction issued in the Murray-Flannery litigation, which specifically applied to this purported "undisputed amount." His request that SCGC issue a draft to him appeared to directly contradict the terms of the injunction.

SCGC counsel responded to Daneshrad, "Unless we have a written agreement from **all parties** involved that only 1/3 of the settlement is in dispute and that 2/3 of the

3

settlement amount can be paid to you, we will need to interplead 100% of the settlement." Daneshrad continued to insist that SCGC send him two-thirds of the settlement amount, while SCGC counsel continued to express an intent to interplead the funds. Daneshrad also sent e-mails to Tepper demanding that he authorize SCGC to pay the two-thirds amount to Daneshrad. Tepper declined, responding that, in light of the injunction, the only viable option was interpleader.

On March 13, 2013, SCGC counsel, apparently still unaware of the injunction, wrote to both Daneshrad and Tepper, saying it had "no intention of getting involved" in their dispute, and listing three choices for disbursement of the $2,450,000 settlement amount. The first option was one check for $2,450,000 payable to Flannery, Daneshrad, and Tepper's firm. The second was one check for $1,633,333.33 payable to Flannery and Daneshrad, and one check for $816,666.67 payable to Flannery, Daneshrad, and Tepper's firm. The third option was to interplead $2,450,000 with the superior court.

Daneshrad responded that he accepted the second option. Tepper responded, "While my preference would be your proposed option no. 2, since I only want to protect my lien, I understand that on or about February 28, 2013 Andrea Murray made a formal claim to the money to be paid by the Gas Company to Mr. Flannery and that the Superior Court issued an order relating to her claim. That pending order makes it impossible for Mr. Daneshrad and me to agree to place any of the money, as you propose, into a joint signature account. . . . As a result, I believe that the Gas Company's only choice is to interplead the funds." Tepper attached a copy of the injunction order to his e-mail. SCGC soon responded that it had been unaware of the order, that it agreed with Tepper's assessment, and that it would interplead the funds.

Daneshrad, however, continued to seek immediate payment. He proposed a "fourth choice," of a check payable to Flannery and Daneshrad in the sum of $1,633,333.33, with $816,666.67 to be interpleaded. Tepper responded that the option did not solve the problem, since Murray and her lawyers still asserted a claim on the entirety of the $2,450,000.

4

On March 15, 2013, SCGC filed a complaint in interpleader (the interpleader action). Tepper and Murray answered the complaint. Flannery, through Daneshrad, did not answer, but instead filed an anti-SLAPP motion against the interpleader complaint. The motion was denied by the trial court, a decision affirmed by Division Five of this Court in a published opinion, *Southern California Gas Co. v. Flannery* (2014) 232 Cal.App.4th 477.) SCGC was awarded $81,053.44 in fees and costs by the trial court, an award affirmed by the Court of Appeal. (*Id.* at p. 492.)

**Proceedings in this action**

On February 13, 2015, Flannery, still represented by Daneshrad, filed a complaint against Tepper as an individual. The complaint contained only one cause of action: intentional interference with economic relations. It alleged that Tepper knew of the settlement agreement between Flannery and SCGC, that he engaged in conduct that prevented or hindered performance by SCGC, that he intended to disrupt performance, and that his conduct caused Flannery harm.[2]

Tepper filed an anti-SLAPP motion supported by evidence including communications regarding disbursement of the $2,450,000 settlement amount. Flannery opposed the motion, arguing that Tepper breached his "fiduciary duty" by "refusing to agree that SCGC distribute the undisputed 2/3 of the settlement to Flannery."

The trial court granted the anti-SLAPP motion, first noting that Flannery's complaint contained no cause of action for breach of fiduciary duty. The court found that Tepper's conduct was protected activity and that Flannery demonstrated no likelihood of prevailing on the merits of his claim for intentional interference with contractual relations. Referencing the injunction order issued in the Murray-Flannery litigation, the court wrote, "while plaintiff claims defendant interfered with the contract of settlement, there can be no claim of wrongdoing when an attorney simply recognizes a court order

---

[2] On appeal, Flannery identifies the damages he allegedly suffered due to Tepper's interference: the $81,053.44 in attorney fees Flannery was ordered to pay upon losing his anti-SLAPP motion in the interpleader action.

5

[and] attempts to comply with it.  The order . . . directly applied to the funds in question.  If anything, it was plaintiff and his attorney who appear to have been attempting an end run around the injunction by seeking control of two-thirds of the money."  The court awarded attorney fees to Tepper in the amount of $9,100 and entered judgment in his favor.

Flannery timely appealed.

## **DISCUSSION**

We review the trial court's order granting Tepper's anti-SLAPP motion de novo.  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.)

The anti-SLAPP statute allows courts to expeditiously dismiss "'a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights.'"  (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 670; see also § 425.16, subd. (a); *Simpson Strong-Tie, Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21.)  There are two components to a special motion to strike brought under section 425.16.  First, the defendant must show that the challenged cause of action is one arising from protected activity; i.e., from the defendant's exercise of the right to petition or free speech in connection with a public issue.[3]  (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)  Second, if the lawsuit affects constitutional rights, the plaintiff must establish a reasonable probability that he or she will prevail on the merits of the claims.  (§ 425.16, subd. (b)(1); *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76; *Zamos v.*

---

[3]     Under the statute, an act in furtherance of the right of petition or free speech includes:  "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  (§ 425.16, subd. (e).)

6

*Stroud* (2004) 32 Cal.4th 958, 965.) To protect First Amendment rights, the anti-SLAPP statute is "construed broadly." (§ 425.16, subd. (a); *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735.)

## I. **Prong one**

Flannery argues that Tepper did not demonstrate the complaint arises from protected activity. "The principal thrust or gravamen of the claim determines whether section 425.16 applies." (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2006) 136 Cal.App.4th 464, 472.) According to Flannery, his complaint is not based on allegations that Mr. Tepper asserted a lien or filed an answer in the interpleader action. Instead, it is based on allegations that Tepper engaged in conduct that prevented or hindered SCGC from complying with the settlement agreement in the wildfire action.

This argument is fatuous. Tepper's supposed interference in the settlement was entirely based on his assertion of a lien. His conduct in suggesting that SCGC interplead the funds in light of the competing claims was a statement made in connection with a judicial proceeding—the wildfire action. It was also preparatory to and in anticipation of further litigation—the interpleader action. It therefore constituted protected activity under the anti-SLAPP statute. (See *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 [communications made in anticipation of litigation are "'entitled to the benefits of section 425.16'"].)

Flannery also contends that Tepper, through his communications with SCGC, breached the fiduciary duty owed to him as a former client, and that the anti-SLAPP statute does not apply in attorney-client disputes. The complaint, however, contains no cause of action for breach of fiduciary duty. We therefore have no cause to consider this contention. (See *Oviedo v. Windsor Twelve Properties, LLC* (2012) 212 Cal.App.4th 97, 109 [issues on an anti-SLAPP motion are framed by the pleadings].)

Even if consideration of this argument were appropriate, however, it would fail. The defendant in *Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153 made an identical argument as the one made by Flannery—that the anti-SLAPP statute is

7

inapplicable in actions by clients against their attorneys. The court flatly rejected this assertion, noting that cases in which the anti-SLAPP statute was found not to apply "did not concern a statement made in connection with litigation, but instead concerned some other conduct allegedly constituting a breach of professional duty." (*Id.* at p. 1170.) Here, as in *Fremont Reorganizing*, the gravamen of the litigation involves statements made in connection with litigation. The trial court, therefore, properly found prong one of the anti-SLAPP statute satisfied.

## II. Prong two

When the first prong on an anti-SLAPP motion is satisfied, the burden shifts to the plaintiff to establish a probability of prevailing. (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 213.) The plaintiff must show that the complaint is legally sufficient and is supported by evidence that, if credited, would be sufficient to sustain a favorable judgment. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 93; *Major v. Silna* (2005) 134 Cal.App.4th 1485, 1498.) The burden under the second prong is similar to that of a party opposing a motion for summary judgment. (*Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 768; *Delois v. Barrett Block Partners* (2009) 177 Cal.App.4th 940, 947.) The anti-SLAPP motion should be granted if the defendant's evidence in support of the motion defeats the plaintiff's attempt to establish evidentiary support for the claim, as a matter of law. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.)

"To prevail on a cause of action for intentional interference with contractual relations, a plaintiff must plead and prove (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." (*Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1148.)

Flannery did not demonstrate any probability of establishing the third and fourth elements of this cause of action. The settlement funds at issue were held by SCGC and it made the choice of what to do with the funds. Tepper simply informed SCGC that there was a dispute over the ultimate entitlement to the funds and that an injunction order had

8

been entered in the Murray-Flannery litigation. The injunction order required that the settlement proceeds be deposited in a trust account in the names of both Murray's and Flannery's attorneys and that no disbursements be made until further order of the Murray-Flannery court. If there was any disruption to the settlement agreement between SCGC, Flannery, and Murray, it arose from this injunction order, not from communications regarding interpleader.

Moreover, there is no basis to find that interpleader constituted a breach of the settlement agreement. Despite the injunction order, Daneshrad insisted that SCGC pay the funds directly to him. SCGC's choice not to violate a court order and instead to interplead the funds was entirely valid. As stated by Division Five in deciding the interpleader action appeal, "Although Flannery suggests that Tepper colluded with SCGC and influenced its decision to file the interpleader complaint, the record does not support such an inference. . . . [¶] . . . The existence of an alternate method for resolving the competing claims of Flannery and Tepper does not preclude an interpleader action as a viable legal option for SCGC. Flannery does not cite to any case imposing on the plaintiff in an interpleader action a duty to resolve conflicting claims by means other than interpleader. The function of an interpleader action is to eliminate the risk of incorrectly resolving conflicting claims." (*Southern California Gas Co. v. Flannery*, *supra*, 232 Cal.App.4th 477, 489.)

Flannery continues to insist—despite the allegations of his complaint—that his cause of action against Tepper really rests on a breach of fiduciary duty. He claims that, by communicating with SCGC regarding disbursement of the funds, and not acquiescing to Flannery's wishes to ignore the injunction order, Tepper violated the fiduciary duties owed to his former client. "The scope of an attorney's fiduciary duty may be determined as a matter of law based on the Rules of Professional Conduct which, 'together with statutes and general principles relating to other fiduciary relationships, all help define the duty component of the fiduciary duty which an attorney owes to his [or her] client.'" (*Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1086.) California State Bar Rules of Professional Conduct, rule 3-210 mandates that an attorney not advise the violation of

9

any ruling unless the attorney believes in good faith the ruling is invalid, in which case the attorney may take "appropriate steps in good faith to test the validity of" the ruling. There is no evidence in the record showing that Tepper reasonably should have believed the injunction order was invalid. Furthermore, even if he had believed the ruling was invalid, he had no obligation to disregard the ruling and assist in violating it.

In any event, if Flannery actually had made a breach of fiduciary duty claim, it would have been barred by the statute of limitations. (§ 340.6, subd. (a) [action against attorney for wrongful act must be commenced within one year of discovery of wrongdoing]; *Radovich v. Locke-Paddon* (1995) 35 Cal.App.4th 946, 966 [same].) Tepper's anti-SLAPP motion, therefore, was properly granted.

## DISPOSITION

The judgment is affirmed. Tepper shall recover his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.

10