Filed 10/29/20  Barrett Daffin Frappier Treder & Weiss, LLP v. Garau CA2/1
# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CARLOS GARAU, <br><br> Defendant and Appellant; <br><br> TORRANCE UNIFIED SCHOOL DISTRICT, <br><br> Defendant and Respondent. | B297827 <br><br> (Los Angeles County Super. Ct. No. YC072760) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ramona G. See, Judge.  Affirmed.

Olga H. Garau for Defendant and Appellant Carlos Garau.

Law Offices of Robert E. Weiss and John A. Perry for Plaintiff and Respondent Barrett Daffin Frappier Treder & Weiss, LLP.

Burke, Williams & Sorenson, Joseph P. Buchman and Brian I. Hamblet for Defendant and Respondent Torrance Unified School District.

Plaintiff and respondent Barrett Daffin Frappier Treder & Weiss, LLP (Barrett), acting as a neutral foreclosure trustee, brought a complaint in interpleader to allow the trial court to determine the proper disposition of $150,209.15 in surplus proceeds from the sale of real property owned by defendant and appellant Carlos Garau (Garau), and his wife, Olga Garau. The surplus proceeds were subject to three competing claims: two claims were asserted by Torrance Unified School District (TUSD) and Investment Retrievers, Inc. (Investment Retrievers), creditors holding judgments against Garau from unrelated litigation. The third claim was made by the Garaus themselves. In their claim, the Garaus contended the surplus proceeds were the result of a wrongful foreclosure by a lender, which was the same position the Garaus unsuccessfully advanced in two previous cases, one in state court and one in federal court. In both cases, the courts entered judgment in favor of the lenders and other defendants. The state court judgment was subsequently affirmed by this court. (*Garau v. Nationstar Mortgage, LLC* (Dec. 12, 2018, B281879) [nonpub. opn.].)

Garau, represented by Olga Garau, an attorney, responded by filing a special motion to strike the complaint in interpleader under Code of Civil Procedure section 425.16,[1] commonly referred to as the anti-SLAPP statute (strategic lawsuit against public participation). Garau argued the interpleader action arose from his constitutionally-protected rights of petition and free speech— ostensibly, the two wrongful foreclosure actions and his written claim for the surplus funds—and contended Barrett had no probability of prevailing on the complaint.

---

[1] Unless otherwise specified, further statutory references are to the Code of Civil Procedure.

2

The trial court denied the anti-SLAPP motion on the ground Garau failed to meet his threshold burden of establishing the complaint in interpleader arose from protected conduct. Instead, the existence of competing claims for the surplus funds triggered Barrett's statutory right to interplead those funds with the trial court for a judicial determination as to the appropriate distribution. We conclude that the trial court correctly found the claims made by Garau's judgment creditors and the Garaus, themselves, were not constitutionally protected activity under the anti-SLAPP statute. Accordingly, the judgment is affirmed.

## FACTS AND PROCEDURAL BACKGROUND[2]

Garau and his wife, Olga Garau, purchased real property (the property) on Walnut Street in Torrance, California in 1989. In June 2007, they borrowed $432,250 from NBGI, Inc. (NBGI), secured by the property. They signed a 30-year promissory note, as well as a deed of trust, identifying NBGI as the lender, and Mortgage Electronic Registration Systems, Inc. (MERS) as a nominee for the lender and the lender's successors and assigns, and as the beneficiary under the deed of trust. The deed of trust included a power of sale in the event of the borrowers' default.

Countrywide Home Loans, Inc. was the original loan servicer until it was acquired by Bank of America in July 2009. In September 2013, servicing of the loan was transferred to Nationstar Mortgage, LLC (Nationstar). In September 2015, Nationstar

---

[2] In addition to the record before us, on this court's own motion we take judicial notice of certain limited background facts from the December 12, 2018 opinion by Division Three of this court. (*Garau v. Nationstar Mortgage, LLC, supra,* B281879.) (See Evid. Code, § 452, subd. (d).)

3

recorded an assignment of deed of trust, indicating that MERS, as nominee for NBGI, had assigned the Garaus' deed of trust to HSBC Bank USA (HSBC). Two months later, HSBC recorded a substitution of trustee, naming Barrett as successor trustee.

On November 17, 2015, Barrett recorded a notice of default and election to sell under the deed of trust, stating that the Garaus were $18,761 behind in their mortgage payments. On February 16, 2016, Barrett recorded notice of a trustee's sale to be conducted on March 23, 2016.

Two days before the scheduled sale, the Garaus filed a verified petition in the Los Angeles County Superior Court against Nationstar, HSBC, and Barrett, seeking a writ of mandate (§ 1085), writ of prohibition (§ 1102), and declaratory relief (§ 1060). Their pleading sought to have the foreclosure sale canceled or stayed until the rights and duties of the parties could be finally adjudicated, to prohibit the defendants from proceeding with a nonjudicial foreclosure, and to obtain a declaration with respect to the rights of the parties in connection with the imminent foreclosure sale. The Garaus alleged, inter alia: The reassignment of their note to HSBC was void; MERS was not authorized to do business in California; and the corporate assignment of the deed of trust, the substitution of trustee, the notice of default, and the notice of trustee's sale, were defective and had been wrongfully recorded.

After Barrett unilaterally rescinded the notice of trustee's sale, the trial court sustained demurrers to the writ of mandate and writ of prohibition causes of action without leave to amend, and overruled the demurrer to the declaratory relief claim. The trial court ruled the Garaus were not entitled to a writ of mandate under section 1085 because they were not seeking to compel the defendants to perform any statutory or constitutional duty, and

4

they were not entitled to a writ of prohibition under section 1102, which lies to restrain the exercise of a judicial function, because a nonjudicial foreclosure is not a judicial function.

The defendants filed motions for judgment on the pleadings, arguing the sole remaining cause of action for declaratory relief should be dismissed because there was no pending foreclosure and thus no justiciable controversy. Further, even assuming the existence of a judicial controversy, the Garaus lacked standing to challenge the assignments of the deed of trust, could not show they were prejudiced by a procedural irregularity in the foreclosure process because they were in default on their loan, and had failed to comply with the requirement that they tender payment.

The trial court granted the defense motions for judgment on the pleadings and, on February 17, 2017, entered a judgment of dismissal in favor of Nationstar, HSBC, and Barrett. Our colleagues in Division Three affirmed the judgment on December 12, 2018, concluding the Garaus could not maintain a *preemptive* action for declaratory relief challenging the right, power, and authority of a foreclosing beneficiary or beneficiary's agent to initiate and pursue foreclosure.

Meanwhile, on September 25, 2017, shortly before the scheduled foreclosure sale, the Garaus filed a complaint in federal court alleging violations of the Truth in Lending Act (15 U.S.C. § 1601 et seq.) and asserting claims for fraud, unfair business practices, and financial abuse of disabled persons against Nationstar, HSBC, and Barrett (the federal action). According to Garau, the federal action asserted his position that the lender's title claim was void and could not form the basis of nonjudicial foreclosure proceedings, and also that the substitution of Barrett as trustee was unlawful as it was allegedly made without the Garaus'

5

knowledge. The district court granted a motion for judgment on the pleadings filed by Barrett and dismissed the case on April 13, 2018. The Garaus did not appeal the dismissal.

Barrett, acting as the duly substituted foreclosure trustee, moved the foreclosure through a trustee's sale on September 29, 2017. At the sale, the winning bid by a third party at public auction exceeded the debt owed to the lender by $150,209.15.[3] Barrett gave notice of the surplus funds to all lienholders of record, including the Garaus.

Defendant and respondent TUSD asserted two separate claims to the excess proceeds in the amounts of $12,606.98 and $1,093,074.58, pursuant to judgments entered in its favor and against Garau in a prior unrelated civil matter. Defendant Investment Retrievers asserted a claim in the amount of $19,137.09 arising from an abstract of judgment recorded in 2013.

Garau and Olga Garau, in turn, made a lengthy written demand to Barrett, refusing to accept the results of the completed foreclosure sale, disputing the validity of the junior liens and associated lienholder claims, and instructing Barrett not to disburse the surplus funds. The Garaus asserted three " 'junior liens or encumbrances' " recorded against the property. The first was a declaration of homestead recorded in 2007 and purportedly

---

[3] Garau asks this court to take judicial notice of the trustee's deed upon sale resulting from the foreclosure sale. He also seeks judicial notice of his complaint against TUSD. (*Garau v. Torrance Unified School District* (Super. Ct. L.A. County, No. BC313368).) We decline to do so as neither document is relevant to any dispositive issue on appeal. (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 544, fn. 4; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1089, fn. 4.)

"securing statutory rights . . . up to the maximum statutory amount under [section] 714.730[, subdivision] (a)(3) for which [the Garaus] may qualify at the time of final adjudication on the merits." The Garaus also identified a notice of pendency of action they recorded in 2016 in connection with the state action by the Garaus against Nationstar and other entities. The third encumbrance was a notice of lis pendens recorded by the Garaus on the same date the federal action was filed.

In the face of competing claims to the surplus funds, Barrett commenced an interpleader action and deposited the funds with the trial court. Barrett disavowed any interest in the surplus funds and alleged it was "unable to determine the priority of [the competing] claims or to safely distribute the remaining sale proceeds without risk of liability to one or more of the other claimants."

In addition to a demurrer and a motion to strike the complaint in interpleader, Garau, represented by Olga Garau, brought a special motion to strike pursuant to section 425.16 (anti-SLAPP motion). Garau asserted the complaint in interpleader was brought primarily to chill his valid exercise of his constitutional rights of freedom of speech and petition for the redress of grievances. Specifically, Garau contended the interpleader action violated the couple's "litigation against both TUSD's and [Investment Receiver's] claims" and the "legal nonexistence of [the] 'surplus funds' and Barrett's right to interplead them." (Italics omitted.) Garau claimed the surplus funds were the result of a "wrongful foreclosure that Barrett had no legal right to conduct," which assertion was the subject of both the state action and the federal action. (Italics omitted.) In short, Garau argued the interpleader action lacked merit, and was a SLAPP or "strategic

7

lawsuit against public participation," because the foreclosure proceedings from which the surplus funds were derived was wrongful in the first instance.

The court denied the anti-SLAPP motion, finding Garau failed to meet his burden to establish the complaint in interpleader arose from an act in furtherance of his right to petition or free speech and, accordingly, the burden never shifted to Barrett to demonstrate a probability of prevailing on the merits. In particular, the trial court found the complaint in interpleader did not affect Garau's ability to seek redress for his claim that the foreclosure was wrongful and, in fact, Garau "pursued numerous civil actions to redress those grievances in both [s]tate and [f]ederal [c]ourt." Having found Garau could not meet his threshold burden, the trial court found the burden of proof did not shift to Barrett to establish a probability of prevailing on its complaint.

Garau timely appealed the trial court's order.

## DISCUSSION

### A.    *Relevant law governing anti-SLAPP motions*

Section 425.16 permits a defendant to file a special motion to strike [i.e., anti-SLAPP motion] when a plaintiff brings a claim against the defendant "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).)

"Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the

8

plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.)

" 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 278–279.) If the defendant fails to meet the threshold showing that the plaintiff's cause of action is one arising from protected activity under section 425.16, subdivision (e), the court must deny his anti-SLAPP motion. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.)

An appellate court reviews de novo the grant or denial of an anti-SLAPP motion. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.) We do not weigh the evidence; rather, we accept as true evidence favorable to Barrett, and evaluate evidence favorable to Garau, to determine whether as a matter of law, it defeats Barrett's evidence. [4] (*Soukup v. Law Offices of Herbert Hafif, supra*, 39 Cal.4th at p. 269, fn. 3.)

---

[4] Barrett contends Garau's failure to designate the transcript from the anti-SLAPP hearing warrants affirmance of the order below. California Rules of Court, rule 8.120(b) requires a reporter's transcript on appeal only if "an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court." California Rules of Court, rule 8.130(a)(4) provides that an appellant may "elect[ ] to proceed without a reporter's transcript." A record of oral argument is not necessary where, as here, our review is de novo, none of the parties relies upon the oral proceedings before the trial court, and the appellate record includes the trial court's written order and all the evidentiary materials germane to the anti-SLAPP motion. (See *People ex rel. Harris & Becerra v. Shine* (2017) 16 Cal.App.5th 524, 533 [no

### B.   The Complaint in Interpleader Does Not Arise from Protected Activity

"In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78, italics omitted.)  The anti-SLAPP's statute focuses not on the form of a cause of action, but on the *defendant's* underlying activity that gives rise to the asserted liability and whether that activity constitutes protected speech or petitioning.  (*Navellier v. Sletten*, *supra*, 29 Cal.4th at pp. 92–93.)

" 'Interpleader is an equitable proceeding by which an obligor who is a mere stakeholder may compel conflicting claimants to money or property to interplead and litigate the claims among themselves instead of separately against the obligor . . . .' [Citation.]" (*Southern California Gas Co. v. Flannery* (2014) 232 Cal.App.4th 477, 486.)  " 'The true test of suitability for interpleader is the stakeholder's disavowal of interest in the property sought to be interpleaded, coupled with the perceived ability of the court to resolve the entire controversy as to entitlement to that property without need for the stakeholder to be a party to the suit.  " '[I]f the relations of the parties are such that the court's decision would determine the responsibility of the [interpleader plaintiff], he is for the purposes and within the scope of the code section authorizing interpleader a mere stake-holder.' " [Citations.]' [Citation.]" (*Id*. at pp. 486–487.)

---

reporter's transcript of motion hearing was necessary on appeal where the "arguments on appeal do not require consideration of colloquy during hearing on the motion"].)

It appears that Garau asserts the complaint in interpleader was not merely an attempt to compel him and the other claimants to litigate their respective rights to the surplus foreclosure funds between themselves, but was instead a disguised attempt to further wrongful conduct by distributing funds from a foreclosure he contends should never have occurred. Garau argues the complaint in interpleader arose from a wide variety of conduct, including his "lawsuits and appeals against TUSD and Barrett," his recording of a homestead exemption, his recording of notices of lis pendens related to the state action and the federal action, and his December 16, 2017 response to Barrett's notice of surplus foreclosure proceeds. In other words, Garau believes the interpleader action was a response to all of the prior litigation matters—those that gave rise to the judgments in favor of TUSD and Investment Retrievers, as well as the state and federal actions the Garaus took to attempt to stop the foreclosure. The trial court rejected these arguments, finding instead that the interpleader action arose from the competing claims to the surplus funds asserted by TUSD, Investment Retrievers, and the Garaus themselves. We agree with the trial court's analysis.

Barrett indisputably received three claims to the surplus funds: one from TUSD and one from Investment Retrievers based on their separate judgments against Garau, and a third from the Garaus. In their claim, the Garaus asserted Barrett was precluded from disbursing the funds because "litigation is pending disputing the validity of the instruments upon which the wrongful foreclosure of the property is based," Garau was entitled to all of the surplus funds as compensation for "damages," and Olga Garau's community property share in the surplus funds could not be used to satisfy Garau's obligations.

11

Section 386, subdivision (b) permits "[a]ny person, firm, corporation, association or other entity against whom double or multiple claims are made, or may be made, by two or more persons which are such that they may give rise to double or multiple liability, [to] bring an action against the claimants to compel them to interplead and litigate their several claims." Barrett's interpleader claim was thus simply a procedural mechanism for placing in one action competing claims to a fund it was holding and in which Barrett itself had no claim.

Put differently, receipt of claims by TUSD, Investment Receivers, and the Garaus was, in and of itself, sufficient to trigger Barrett's statutory right to interpleader. Barrett owed no duty to attempt to resolve the dispute between the warring claimants. (See *Hood v. Gonzales* (2019) 43 Cal.App.5th 57, 76.) Thus, it was the existence of these competing claims, and not the foreclosure proceedings that generated the surplus funds, that gave rise to the complaint in interpleader.[5]

Our decision that the complaint in interpleader was not brought to chill Garau's constitutional rights is bolstered by the inescapable fact the state action and the federal action, both of which pursued the same "wrongful foreclosure" theme woven throughout Garau's anti-SLAPP motion, were both fully litigated to judgments adverse to the Garaus. On that ground alone, the complaint in interpleader did not arise from acts in furtherance of

---

[5] Notably, even absent the Garaus' claim, Barrett nonetheless would have been compelled to file a complaint in interpleader when presented with the competing claims by TUSD and Investment Retrievers. (§ 386, subd. (b).)

12

Garau's right of petition or free speech.  (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106.)

Accordingly, we conclude Garau has failed to make the necessary prima facie showing that his activity came within the protection of the anti-SLAPP statute.  Having so concluded, it is unnecessary to determine whether Barrett established the probable validity of its interpleader action.

## DISPOSITION

The order denying Garau's anti-SLAPP motion is affirmed. Barrett is to recover its costs on appeal.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


BENDIX, J.