Filed 7/11/22  Kaplan v. Davidson CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SEVEN

| | |
|---|---|
| TODD STUART KAPLAN, | B312826 |
| Petitioner and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. 21STRO01019) |
| DONALD DALE DAVIDSON, | |
| Respondent and Appellant. | |

APPEALS from orders of the Superior Court of Los Angeles County, Lawrence Riff, Judge.  Affirmed in part; dismissed in part.

Uplift Law, Melissa G. Fulgencio and John C. Scholz for Petitioner and Appellant.

Lieber & Galperin and Yury Galperin for Respondent and Appellant.

————————————

Dr. Donald Dale Davidson appeals from an order denying the special motion to strike (Code Civ. Proc., § 425.16; anti-SLAPP statute)[1] a request for a civil harassment restraining order filed by Davidson's former business associate Todd Kaplan. In support of his request, Kaplan declared Davidson made hundreds of harassing communications through text messages and social media posts to or about Kaplan. On appeal, Davidson contends his communications were protected speech related to litigation between Davidson and Kaplan about their past business dealings.

Kaplan cross-appeals from the trial court's order denying his oral request for attorneys' fees. He contends the court erred in denying his request because he was the prevailing party on the special motion to strike and the motion was frivolous.

We affirm the trial court's denial of Davidson's special motion to strike. We dismiss Kaplan's cross-appeal from the denial of his request for attorneys' fees as taken from a nonappealable order.

---

[1] "SLAPP is an acronym for 'strategic lawsuits against public participation.'" (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 413, fn 2.) All further statutory references are to the Code of Civil Procedure.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *The Parties' Business Relationship*[2]

When Davidson and Kaplan met in 2016, they discussed potential business arrangements. Davidson is a medical doctor who specializes in cannabis. In 2017 Davidson and Kaplan entered into an agreement to create and distribute a brand of marijuana and hemp products called "'Dr. D,'" using Davidson's likeness. In 2017 Davidson loaned $350,000 to Kaplan's business, Vertical Wellness. In January 2019, Davidson transferred the outstanding balance on his loans into equity in Vertical Wellness. But by June 2019 the relationship between Davidson and Kaplan had frayed.

B. *Kaplan's Request for a Civil Harassment Restraining Order*

On March 2, 2021 Kaplan filed a request for a civil harassment restraining order against Davidson under section 527.6.[3] The request identified Davidson as a "current investor/business partner," "stalker," and "former friend." (Capitalization omitted.) Kaplan alleged that since June 2019 Davidson had harassed Kaplan verbally and in text messages Davidson sent to Kaplan and others, as well as messages Davidson posted online to social media websites. Further,

---

[2] The factual background regarding the parties' business relationship is taken from Kaplan's declaration in opposition to Davidson's special motion to strike.

[3] Under section 527.6, subdivision (a)(1), "A person who has suffered harassment . . . may seek a temporary restraining order and an order after hearing prohibiting harassment as provided in this section."

Davidson unlawfully parked his car in Kaplan's office parking lot for two months and "kept a guard dog for several months at [Kaplan's] office," which made Kaplan and his employees fearful.

In an attached declaration, Kaplan averred Davidson "sent hundreds of harassing, aggressive, hostile, and threatening messages in the past 11 months" to a group of recipients including Kaplan and "13 current and former employees" of Kaplan's business. Kaplan declared Davidson "sends approximately 6-12 texts a day" and makes "harassing and threatening social media posts . . . weekly, if not daily, with no provocation from [Kaplan]." Further, Davidson "seems to be keeping tabs" on Kaplan and his wife, noting Davidson sent a text message to Kaplan "indicating he is watching my wife by describing her driving her new car." Kaplan stated, "Due to [Davidson's] persistent, harassing, aggressive, hostile conduct and written communications, my wife and I both feel our safety and security are being threatened and are afraid for our lives."

Kaplan attached to his request 20 pages of images of his phone and other screen captures showing multiple text messages and social media posts by Davidson to or about Kaplan, which Kaplan declared were "a few examples" of Davidson's harassing communications. Many of the text messages include profanities or insulting language about Kaplan, such as "You are mentally ill and delusional"; "Do you like being treated like shit? No one else does either you weirdo"; "you were a fraud" who did not "come up with a single idea"; "I want your houses, your cars [f]or what you did to me[.] [¶] No mercy for you liars"; "So do you jerk [o]ff to the photos of me [Kaplan]?"; "should I send the photos of me and my girlfriends here to show everyone what you like to see?"; and "You wanted pics of me fucking girls and now what buddy?"

4

Some of the messages sent or posted by Davidson appear to refer to contemplated or pending judicial or other official proceedings, such as "I am going to sue you for so much your head is going to spin"; "Anyways let's all stay in touch here as we get to listen to what [Kaplan] has to say in court"; "The people of LA are going to give you the justice you deserve in court"; "Both of the women I dated while around you will be testifying (they still like me because I'm not a douche like you)"; and "So I hope you['re] ready because I'm bringing the medical board into this and escalating this beyond California to the Trump administration."

Kaplan requested the court restrain Davidson from harassing him or contacting him in any way and from posting harassing messages on social media about Kaplan, his family, and his business.

On March 2, 2021 the trial court granted Kaplan's request for a temporary restraining order. The court ordered Davidson not to contact and to stay at least 100 feet away from Kaplan and Kaplan's wife, and the court set a hearing on Kaplan's request for a permanent restraining order.

C.    *Davidson's Special Motion To Strike*

On April 15, 2021 Davidson filed a special motion to strike Kaplan's request for a civil harassment restraining order. Davidson asserted all of the text messages and social media posts submitted in support of Kaplan's request related to "prior, pending and/or future litigation" between Kaplan and Davidson, and therefore Kaplan's request for a restraining order arose from Davidson's protected activity. Davidson argued Kaplan could not show a probability of success on his claim because all of the conduct was either too remote in time or otherwise did not meet

5

the standard for civil harassment under section 527.6, and Davidson's conduct had the legitimate purpose of "protect[ing] others from the fraudulent conduct of [Kaplan]."

In his declaration in support of the motion, Davidson stated, "Since 2016, I had a close business relationship with Vertical Wellness . . . and its management team of Todd Kaplan, Courtney Dorne, and Smoke Wallin, among others." However, the business relationship "soured" by 2019 and resulted in Davidson filing a lawsuit that year against Kaplan, Dorne, and companies affiliated with Vertical Wellness for breach of contract and related causes of action; Kaplan and the other defendants filed a cross-complaint against Davidson alleging, among other causes of action, breach of contract and defamation. (*Davidson v. Kaplan et al.* (Super. Ct. Los Angeles County, 2019, No. 19STCV45164).) The parties later reached an informal resolution, and the lawsuit was dismissed. However, in 2021 Kaplan filed another lawsuit alleging 16 causes of action against Davidson, again including causes of action for breach of contract and defamation. (*Kaplan v. Davidson* (Super. Ct. Los Angeles County, 2019, No. 21STCV10009).)

In his opposition, Kaplan argued Davidson's communications lacked any connection to an official proceeding and therefore were not protected. Further, Davidson's communications were unprotected commercial speech. Kaplan asserted he had shown a probability of prevailing on the merits of his request for a civil harassment restraining order in light of the numerous harassing text messages and social media posts by Davidson.

In a declaration filed in opposition to the special motion to strike, Kaplan averred that from June 2019 to February 2021

Davidson sent nearly 500 text messages to Kaplan, his family, and past and present employees of Vertical Wellness. Kaplan added, "The content and volume of the messages and [Davidson's] use of group texts and social media forums also go beyond being connected to any litigation between [Davidson], [Kaplan], and Vertical [Wellness]. Even if some of the content touches on the internal business disputes that have arisen between [Kaplan], [Davidson], and Vertical [Wellness] or took place while some of the prior litigation was active, the bulk of the writing and content serves no legitimate purpose."

After a hearing, on May 10, 2021 the trial court denied Davidson's special motion to strike. The court reasoned "the alleged conduct and communications by Dr. Davidson are not in the nature of communications made in connection with official proceedings." The court found Davidson had not carried his burden to show "the chronological relationship between the official proceeding . . . and the alleged conduct." The court also noted some of the messages referred to sexual acts or made "statements which are in the nature of ad hominem attacks." The court continued, "[E]ven if these communications are the stuff of prong one, even if [Davidson] had carried his burden, I think [Kaplan] has then carried his burden on this motion to show a probability of success. I think that these are harassing communications when considered both for content and volume."

The trial court denied Kaplan's attorney's oral request for attorneys' fees, reasoning Davidson's motion did not meet the statutory standard under section 425.16, subdivision (c)(1), because the motion was not made for the purpose of harassing Kaplan and was not "totally and completely without merit."

7

The trial court's May 10, 2021 minute order stated Davidson's special motion to strike "is argued and denied as recited in open court" and directed Kaplan's attorneys to prepare a written order after hearing. On August 16, 2021 the court entered a signed order denying Davidson's special motion to strike and denying the parties' requests for attorneys' fees.

Davidson timely appealed from the order denying his special motion to strike. Kaplan cross-appealed from the denial of his request for attorneys' fees.[4]

## DISCUSSION

A. *Special Motions To Strike*

A cause of action arising from an act in furtherance of a defendant's constitutional right of petition or free speech in connection with a public issue is subject to a special motion to

---

[4] Davidson's May 13, 2021 notice of appeal and Kaplan's June 4, 2021 notice of appeal each purport to appeal from orders entered on May 10, 2021. However, the May 10 minute order does not reflect the court's ruling on Kaplan's request for attorneys' fees. On May 18, 2022 this court, pursuant to the stipulation of the parties, ordered the record augmented with the trial court's August 16, 2021 order denying Davidson's special motion to strike and denying Kaplan's request for attorneys' fees. To the extent Davidson's and Kaplan's notices of appeal were premature, we treat them as filed immediately after entry of the trial court's August 16, 2021 order. (Cal. Rules of Court, rule 8.104(d)(1) ["A notice of appeal filed after judgment is rendered but before it is entered is valid and is treated as filed immediately after entry of judgment."]; rule 8.104(e) ["As used in (a) and (d), 'judgment' includes an appealable order if the appeal is from an appealable order."].)

8

strike unless the plaintiff demonstrates a probability of prevailing on the claim. (§ 425.16, subd. (b)(1); see *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009; *Baral v. Schnitt* (2016) 1 Cal.5th 376, 381 (*Baral*).) An "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue'" includes, in relevant part, "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(1).)

"Litigation of an anti-SLAPP motion involves a two-step process. First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.] Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit."' [Citation.] If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni v. St. Joseph Health System, supra*, 11 Cal.5th at p. 1009; accord, *Baral, supra*, 1 Cal.5th at p. 384.)

As part of the second step, we apply a "'"summary-judgment-like procedure." [Citation.] The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] "[C]laims with the requisite minimal merit may proceed."'" (*Sweetwater Union High School Dist. v. Gilbane Building*

*Co.* (2019) 6 Cal.5th 931, 940; accord, *Baral, supra,* 1 Cal.5th at pp. 384-385.)

"We review de novo the grant or denial of an anti-SLAPP motion." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067; accord, *Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.)

B.    *Davidson Has Failed To Show the Trial Court Erred in Denying His Special Motion To Strike*

Davidson contends the trial court erred in finding Kaplan's request for a civil harassment restraining order did not arise from Davidson's protected activity at the first step of the anti-SLAPP analysis, because all of Davidson's communications were made in connection with pending or prospective judicial proceedings between Davidson and Kaplan. However, even if Kaplan's civil harassment claim arises from Davidson's protected activity, which is questionable,[5] Davidson has failed to meet his burden on appeal to show the trial court erred in its finding on

---

[5]    Some of Davidson's text messages and social media posts relied on by Kaplan to support his request for a civil harassment restraining order potentially constitute protected speech concerning pending or future litigation between the parties or administrative proceedings, for example, those referencing court proceedings or initiation of a medical board proceeding. But most of the messages and postings are clearly not protected under section 425.16, subdivision (e)(1), for example one describing Kaplan as "mentally ill and delusional" and others discussing the exchange of photographs of sexual acts. Because Davidson has not met his burden on appeal as to the second step of the anti-SLAPP analysis, however, we do not parse his allegations as to protected and non-protected conduct.

the second step of the anti-SLAPP analysis because his opening brief does not explain why the evidentiary showing Kaplan made in opposition to Davidson's special motion to strike was insufficient to support Kaplan's claim for civil harassment. (*Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583, 591, fn. 3 ["We do not consider arguments raised for the first time in the reply brief without a showing of good cause . . . ."]; *Altavion, Inc. v. Konica Minolta Systems Laboratory, Inc.* (2014) 226 Cal.App.4th 26, 63, fn. 27 [argument made for the first time in reply brief is forfeited].) We therefore need not decide whether Davidson met his burden on the first step of the anti-SLAPP analysis. (See *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820 [proceeding "directly to the second prong" where court "readily found" plaintiff had demonstrated a probability of prevailing on its claims]; *Southern California Gas Co. v. Flannery* (2014) 232 Cal.App.4th 477, 485 [court proceeded "directly to the second step of analysis" where plaintiff established a probability of prevailing on the merits, "which provide[d] an adequate basis for affirming the order of the trial court"].) Moreover, Davidson's single contention in his reply brief—that the quantity of his communications to or about Kaplan is irrelevant to whether the communications were harassing—lacks merit.

Civil harassment includes any "knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." (§ 527.6, subd. (b)(3).) A course of conduct in turn is defined as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including . . . sending harassing correspondence to an

11

individual by any means . . . ." (*Id*., subd. (b)(1).)  The number of communications Davidson sent to Kaplan is highly relevant to whether Kaplan has shown a series of harassing acts by Davidson.  (See *Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1413 [evidence appellant wrote three "vile and vitriolic" letters to his girlfriend that he intended for her mother to open, including one urging the girlfriend to consider killing her parents, together with his taunting the mother during a phone call, constituted substantial evidence of a harassing course of conduct].)  To state the obvious, receiving hundreds of harassing messages is more likely to annoy the recipient than one such message.  And here, many of the messages were of the type likely to annoy or harass Kaplan, including those calling him "mentally ill," delusional," a "weirdo," and a "liar[]," accusing Kaplan of being "a fraud" without "a single idea"; and sending multiple messages about the exchange of photographs of sexual acts.  Accordingly, the trial court did not err in denying Davidson's special motion to strike.

C.      *The Order Denying Kaplan's Request for Attorneys' Fees Is Nonappealable*

A trial court's order is appealable only when made so by statute.  (*Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5; *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696.)  Section 425.16, subdivision (i), provides that "[a]n order granting or denying a special motion to strike shall be appealable under Section 904.1."  However, neither section 425.16 nor section 904.1 provides that an order denying an attorneys' fee award in connection with the denial of a special motion to strike is appealable.

"As with all questions of statutory interpretation, our fundamental task is to determine and effectuate the intended purpose of the statutory provisions at issue. [Citation.] Our analysis begins with the statutory text, which usually provides the best indicator of the relevant legislation's purpose. We generally assign statutory terms their ordinary meaning, while also considering the context—which includes related provisions and the overall structure of the statutory scheme—to further our understanding of the intended legislative purpose and guide our interpretation." (*Ryan v. Rosenfeld* (2017) 3 Cal.5th 124, 128 [considering whether denial of section 663 motion to vacate final judgment is appealable].) "'If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.'" (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616-617.)

In *Doe v. Luster* (2006) 145 Cal.App.4th 139, 142 (*Doe*), we concluded that an order denying a plaintiff's motion for attorneys' fees was not immediately appealable where the plaintiff had successfully opposed a special motion to strike. We explained the plain meaning of section 425.16, subdivision (i), authorizing an appeal from "[a]n order granting or denying a special motion to strike," did not encompass a ruling on "an interlocutory order granting or denying attorney fees following the trial court's ruling on a special motion to strike." (*Doe*, at p. 147.) Further, as to the statute's legislative history, "The Legislature's concern was that the inability to appeal immediately from the denial of a meritorious special motion to strike defeated the protective purpose of section 425.16. No such similar purpose is served by permitting an immediate appeal from an interlocutory order

13

granting or denying attorney fees following the trial court's ruling on a special motion to strike." (*Ibid*.)

We concluded in *Doe* that the order denying the fees motion was not immediately appealable despite the fact the defendant had also appealed from the order denying the special motion to strike. (*Doe*, *supra*, 145 Cal.App.4th at pp. 146-147; see *id*. at p. 142, fn. 2.) While in *Doe* we considered whether a separate motion for attorneys' fees was immediately appealable, we also found "[t]here similarly is no creditable argument that combining the two motions—one that results in an immediately appealable order; one that does not—somehow transforms the nonappealable order into one that is appealable." (*Id*. at p. 150.)

Following our decision in *Doe*, Division Three of the Fourth Appellate District in *Baharian-Mehr v. Smith* (2010) 189 Cal.App.4th 265 (*Baharian-Mehr*) decided in a case involving a single order denying an anti-SLAPP motion and awarding attorneys' fees that allowing an appeal from the denial of an anti-SLAPP motion while deferring the issue of attorneys' fees "would result in absurd consequences the Legislature never contemplated." (*Id*. at p. 275.) The court observed that deferring consideration of attorneys' fees "artificially separates two intertwined issues" and potentially wastes judicial resources. (*Id*. at p. 274.) On this basis the court concluded that when the denial of an anti-SLAPP motion is properly appealed, the appellate court has jurisdiction under section 425.16, subdivision (i), to review both the denial of the anti-SLAPP motion and the ruling on attorneys' fees. (*Baharian-Mehr*, at p. 275; see *Chitsazzadeh v. Kramer & Kaslow* (2011) 199 Cal.App.4th 676, 680, fn. 2 (*Chitsazzadeh)* ["[a]n attorney fee award in connection with the denial of a special motion to strike

14

is sufficiently interrelated with the denial that the fee award is reviewable on appeal from the order denying the special motion to strike"].)

We reaffirm our holding in *Doe* and decline to follow *Baharian-Mehr* and *Chitsazzadeh*. The order here is neither "[a]n order granting or denying a special motion to strike" appealable under section 425.16, subdivision (i), nor "an order made after a judgment" appealable under section 904.1, subdivision (a)(2). While in some cases it may be more efficient for the Court of Appeal to review the denial of a fees motion when reviewing the denial of the special motion to strike, in many cases there will be no appeal from a later judgment, rendering review of the fees request unnecessary.[6] The decision whether to allow an immediate appeal from the denial of a request for attorneys' fees is a policy decision for the Legislature to make. The statutory language reflects this decision.

We conclude, as we did in *Doe*, that an order denying a plaintiff's request for attorneys' fees is not immediately appealable.[7]

---

[6] When a party believes it would be inefficient for the Court of Appeal to hear the appeal from the trial court's denial of the special motion to strike without hearing an appeal of the attorneys' fees motion, leading to "absurd consequences," the party has the option to file a petition for a writ of mandate, requesting that the appellate court consider the challenge to both rulings at the same time.

[7] Kaplan requests we take judicial notice of a website he attributes to Davidson, asserting the website promotes a brand of marijuana products that competes with products produced by Kaplan. We deny Kaplan's request because the website is not

## DISPOSITION

The order denying the special motion to strike under section 425.16 is affirmed.  Kaplan's appeal from the order denying his request for attorneys' fees is dismissed.  The parties are to bear their own costs on appeal.


FEUER, J.

We concur:


SEGAL, Acting P. J.


WISE, J.*

relevant to either appeal.  (See *Coyne v. City and County of San Francisco* (2017) 9 Cal.App.5th 1215, 1223, fn. 3 [denying judicial notice as to documents that were not relevant to court's analysis]; *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 482 ["We also may decline to take judicial notice of matters that are not relevant to dispositive issues on appeal."].)

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.